We will hear Case 06-55599, David Hurlic v. So. Cal. Gas Co. at this time. Good morning, Your Honors. Good morning. I'm Jeffrey Lewis. I represent Plaintiffs David Hurlic and Susanna Selesky, who are here in the courtroom. And I'd like to reserve, if I can do it. They are here? Pardon me? They are here? They are here, Your Honor, yes. Where are they? Back over there, yes. Thank you very much for being here. Go ahead. I'd like to reserve, if I can keep that much, seven minutes for rebuttal, because I'm sure opposing counts will have a lot of very intelligent points that I'm going to need to answer. But I want to start by saying there are four separate claims in this case. There's the one claim, which is drawn the bulk of the paper, both in this court and many courts around the country, which is the claim that the cash balance formula, as a whole, violates the risks prohibition against the reduction in benefit accruals on the account of any age. And I'm going to come back to that one in a minute, but I don't want to lose sight of the fact that the other three claims that are made in the complaints in this case have nothing to do with that particular claim. It's an independent question. I question that. Okay. Because I notice, I see that the notice provision only requires notice if there's going to be a significant reduction in the rate of future benefit accruals. And that, the meaning of that latter phrase that I just quoted, I take it is the essence of your first claim. If we were to reject that claim, why wouldn't that make the notice requirement also inoperable? Because, Your Honor, in the context of the Section 204H notice claim, the Internal Revenue Service has said in a regulation, we're not just talking about a revenue ruling or a piece of guidance, in a regulation, they have defined for that purpose, Section 204H, rate of future benefit accrual as specifically referring to the amount of future benefit commencing at normal retirement age. So on that issue, there really isn't any dispute that rate of benefit accrual, which is the same phrase, by the way, Your Honor, that is used, of course, in 204BH. Are you saying that you say in the third provision, in the notice provision, the same language means something else? No, I think it means the same, Your Honor. Well, if it means the same, if it's the same thing, and if that's the thing that triggers the obligation to provide notice, if we should disagree with your interpretation of that language in your first claim, it seems to me there's no longer any need to give notice under the third claim. Well, Your Honor, you would have to conclude, then, to do that, that the IRS regulation is not entitled to any consideration or deference because there's a regulation. Now, wholly apart from what we have to do to reach that conclusion, my point to you is that you just told us earlier that the other claims are independent of each other. And I was suggesting to you that if we hold, contrary to your submission, that the rate of return provision does not mean what you say it is, it seems to me if what is done here does not involve a violation of the rate of accrual, it also follows that there is no need to give any notice. Well, perhaps, Your Honor, although presumably, and defendants have argued this in their briefs below, at least, that you could reach different interpretations of what the phrase rate of benefit accrual means in the one context versus the other.  But it seems unlikely in a statute as complicated and technical as this. Well, in that case, Your Honor, and when we get to the rate of benefit accrual issue under 204B1H, one of the points we certainly made in our briefs and I was going to make again to this Court is that I think that the IRS's interpretation of rate of benefit accrual in the form of a regulation should have a great weight with this Court in interpreting that the identical phrase in the other portion of the statute, that is, in Section 204B1H. So I perhaps did overstate my case, Your Honor, and that's a condition statement. The rate of accrual of benefits provision, am I correct that three circuits have now rejected your contention on this point, starting with the Seventh Circuit's opinion by Judge Easterbrook and then two others followed? And you're asking us to create a conflict with those three circuits? I am, Your Honor, and for several reasons. Before we do that, it seemed to me I would think the law would have to be crystal clear in your favor and crystal clear that the three other circuits were wrong. Well, I think it is, Your Honor, and I think those circuits, and I know certainly district court opinion is not ordinarily entitled to the same weight as circuit court opinions, but there have been several district court judges which have given very thoughtful and, I think, cogent criticisms of those opinions. And let me tell you why I think the three circuits were wrong. In the Cooper case, first of all, I think all three circuits completely ignored, they paid lip service to but essentially ignored the very rigid binary structure that ERISA has. Congress, when it enacted ERISA, said you can have two different kinds of plans. You can have a defined benefit plan, which is like a Social Security benefit, is an annuity payable at age 65. That's the promise that the company must keep to the worker. And the risk is on the company as to whether there's enough money there, and there are a whole slew of ERISA provisions having to do with funding of a plan, plan termination insurance, other provisions that apply to those types of plans. And as I understand it, both of you agree this is a defined benefit plan. That's correct. This is a defined benefit plan. The other choice that every employer has and Southern California Gas had before it, when it decided it no longer was happy with the old benefit formula in its defined benefit plan, is it could have created a defined contribution plan. That plan is a savings plan. And for that reason, because it's a savings plan, in defining accrued benefit, Congress clearly said it's the amount in the account. That's what you get. You get the amount put into your account and any interest that accrues. And the company had the choice to do that. The Supreme Court has given companies a great deal of discretion in choosing which type of plan to adopt. They don't require to do one or the other. But having chosen to adopt a defined benefit plan, albeit one with a creative new benefit formula, they had to play by the rules applicable to those plans. And every bit of ERISA, except where Congress specifically stated in a couple of places to the contrary, divides defined benefit from defined contribution plans. It's just repeated. What troubles me about your argument is how do you define, what do you think is meant by the rate of an employee's benefit accrual? What is the rate? Isn't that the amount by which the benefits increase? That's absolutely correct, Your Honor. It's the amount by which the benefits increase. And ERISA defines benefit or accrued benefit, as it were, in a defined benefit plan as an annuity payable at age 65. It does not define benefit for purpose of a defined benefit plan as a hypothetical amount put into a hypothetical account. It just doesn't do that. But the word is rate. Rate means change. That's correct. Change rate of benefit accrual, and I think Judge Scheinlin in the J.P. Morgan case neatly plugged in dictionary definitions of benefit and accrual into the ERISA statutory language, and I think the logical conclusion, it's a common sense conclusion as well, it means rate means some increase. You've got an increase in your benefit, in your accrued benefit. It has to be your accrued benefit. Well, doesn't the rate of accrued benefits mean the rate at which benefits accrue? Yes, and, Your Honor, and if you test a defined benefit, if you test a cash balance plan, in some of the cases, some of the secondary authorities, I don't know if we put it in the record or not, but if you go to the published literature, you can actually see a table that year by year, not only does that the rate decreases per year, the rate of accrual absolutely decreases if the benefit that you're discussing is the accrued benefit as defined for a defined benefit plan in Section 323 of ERISA. Let me explain how that works, Your Honor. However, I mean, I don't know whether you want him to explain. I didn't want to interrupt your answer if you want him to explain that. However, it seems to me that we're really talking about time value of money here. We're not talking about age discrimination. Under this plan, the 65-year-old takes out the whole actuarial equivalent of the annuity, and the younger person gets that amount discounted to the date of retirement. Under the plan, that's exactly what happens. We're talking about time value of money figured out to the whole actuarial equivalent right to the end, and if you take it out sooner, you're going to have it discounted to the date of your retirement. That's just a time value of money question. That has nothing to do with old age discrimination, which I should be worried about. This has to do with whether you get the time value of your money, and if you're going to take it out sooner, you get the amount discounted to the date of retirement. If you're going to take it out when you get there, you'll get the whole amount. I don't see how that has anything to do with what you're trying to suggest. Well, there are three reasons, Your Honor. I would respectfully disagree with you. Number one is time value of money in and of itself doesn't mean much, and in the age discrimination context, and that's what we're really talking about here, in the Arnett case, which is the Ninth Circuit case, the issue there, and it related to an employee benefit plan, was the factor. The key consideration there was anticipated length of future employment, a neutral-sounding term like time value of money. What the court said there, and this was even on a disparate treatment claim, and we're not even going that far here. We have a disparate impact claim. What the court said was the only way that you can come up with the number that results from that seemingly neutral-sounding phrase is by specifically taking into account the age of the person. If you were going to normally work until age 65, you go backwards and say, so the anticipated length of service is 65 minus your age, and the court held that stated a disparate treatment claim under age discrimination laws. Similarly here, you cannot compute the amount of hypothetical interest that is put onto someone's hypothetical account without subtracting a person's actual age from age 65. So age is a direct factor in the computation of the benefit, and for each age you reach, your benefit is less because the hypothetical interest is less because there's fewer years between your actual age and 65. But the statute says because of the attainment of any age, but under this plan, these are not calculated differently because of the attainment of any age. These are calculated all the same. All we have is the discount because you get out early. That's all we've got here. Well, Your Honor, the discount is a different issue because that has to do with the lump sum. When I get to 65, if I could give one quick example, Your Honor. I'm a 60-year-old and I have a 50-year-old working side by side. They both are earning the same salary during a given year. They're paid the same amount. The cash balance formula, let's say hypothetically, and it depends on the formula, is going to have an addition of $800 of deemed interest to the account of the 50-year-old this year, $800 a month payable at age 65. That's the accrual formula. That's what's going to buy. The amount of interest is going to buy $800 a month at age 65. For the age 60-year-old, it's going to buy $400 a month. If I leave work tomorrow morning, whether I'm the 60-year-old or the 50-year-old, my benefit is $800 or $400 a month at age 65. It's not $800 plus interest for 5 years or 15 years, excuse me. It's not $400 plus interest for 15 years. This is not real interest that's being credited, Your Honor. That's the benefit that a defined benefit plan promises, which is the amount of money at age 65. And that doesn't change. Now, I may have a right to a lump sum distribution, but actually, I'm not even going to get the lump sum distribution. It won't be the same as the amount in my hypothetical account. Let me pose this hypothetical to you. There are two employees who are paid the same amount, and the company has retirement at age 65. One of the employees is 50 years old, and one of the employees is only 30 years old. Why couldn't the 50-year-old employee, who is getting the same pay as the 30-year-old employee, say, this is age discrimination because I'm only going to draw my salary for 15 years, and he's going to draw it for 35? Under your theory, why wouldn't that follow? Well, because you can't retire at age 30 and start drawing. No, no. You have to wait until age 65, Your Honor. One employee is saying, I'm going to get less because of my age. I'm only going to be able to draw this salary for 15 years, but the other fellow will be able to draw the salary for 35 years. So this is clearly age discrimination. With all due respect, Your Honor, I don't think that's an apt analogy, because salary you have to work more to earn. It seems to me that's the same basic claim that you're making, that it's not the value of money, it's age. No, I think in that instance, Your Honor, I'm going to have to work my 15 or 30 more years to earn it, whereas in my situation I've worked the same amount of time at the same salary, and I'm getting another benefit that's different and less. I'd like to turn you to this so-called wear-away problem. Thank you, Your Honor. Yes, the first claim that arises out of wear-away arises out of the following. It's undisputed that beginning in 2003, both Ms. Zaleski and Mr. Hurlick are getting zero increase in their retirement benefits. In Ms. Zaleski's case, for six years, she's going to continue getting no increase at all into the summer of 2009, and Mr. Hurlick's case, all the way until 2015. Their benefit is frozen, while side-by-side with them, other workers, again, earning the same salary, are getting increases in their actual benefits, no matter how you want to count actual benefits. Until they come up to this magic line. Magic number. So they've frozen them, and they're giving them less money, and we allege that that's a disparate impact under age discrimination laws. And we chose to allege it under California law. And presumably, Judge Reel held that that was preempted by ERISA. I guess with Judge Reel, we just say it's presumed. Presumed that it was preempted. But that's incorrect under the Supreme Court precedent in the area. Shaw v. Delta Airlines makes quite clear that because of the joint Federal-State enforcement of discrimination laws, that so long as the State law that is invoked in the particular case outlaws the same conduct or practice that would be outlawed by the Federal age discrimination statutes, the State law is considered to be part of the Federal enforcement, and therefore it's saved from preemption under ERISA's other Federal law exception. Is there any significant difference between the State law and the ADEA? Not with regard to this. Both outlaw disparate impact claims. At one time, that was questionable, whether Federal law outlawed disparate impact claims. But they both allow it. They both allow you to challenge disparate impact claims. But the State law does allow an emotional distress claim, and the ADEA does not. The State law claims would be allowed under a statute of limitations. Some State claims would be allowed, and under the ADEA, they would be barred. And it seems to me that if that's the way it is, why should we, as now a circuit court looking to see whether there's a preemption here, why should we allow each State to change a liability under a pension plan? Why should we allow each State to set the statute of limitations for an ADEA claim in an ERISA plan? Well, Your Honor, you don't have to do that. Because there's absolutely no fact before the Court, nor could they be, that this claim was not filed within the applicable Federal statute of limitations. And even the cases which defendants rely on, that was the fact. That's number one. Number two is if the remedy is what troubles, Your Honor, which is emotional distress. First of all, there are two answers to that. In Shaw, the Court didn't talk about remedies. It talked about conduct and practices. And it could very well be that the Supreme Court and the Federal agencies would think that, so long as we're talking about the same practices, that having some additional State remedies helps enforce the Federal law, because it makes employers less likely to violate it. But even if you disagreed with that, Your Honor, the remedy is not that the entire State law claim is preempted here. The remedy is that the State law claim is preempted only to the extent it goes beyond Federal law in allowing those particular remedies. So the solution to that would be, and I'm not suggesting the Court do it, but the solution to that would be we would be holding that the State law, insofar as it goes beyond the ADEA with regard to remedies, is preempted. I have a question. Okay. Under your interpretation of the phrase, rate of an employee's benefit accrual, the argument you're making under your claim one, wouldn't all cash balance plans be invalid? No, Your Honor. They wouldn't. And I know that's the sky is falling argument that some of the amici have made in these cases. There is a way, there are ways, and I'm not an actuary, thankfully, to design cash balance plans where they are not discriminatory towards the older workers. For example, and one of the most obvious ones that's been given several times, is that you could, there are two factors here. There's the initial hypothetical allocation to the account based on pay, and then there's the interest. Those are the two factors. You could compensate for the smaller amount of interest by changing the allocation formula so that it's weighted towards the older employees, so that you balance off the fact they're going to get less interest. So it's only the way this company and other companies have chosen to design their cash balance plans that makes this a violation of risks of Section 204B1H. It didn't have to be that way. Oh, sorry. Did you want to go to anti-backloading? Because, frankly, when I saw the revenue ruling that you sent to us, it seemed to me to suggest that even the IRS had, until 2009, said this is okay with this plan. Only in 2009 do they even put in any revenue ruling have any effect. Then they say that not only that, but there's no question that we can have a fractional rule, and I saw nothing, no evidence in this record that this plan won't satisfy the fractional rule. You're only appealing it on the 133 and the third rule. And so I guess I'm a little worried about your anti-backloading claim at this point, based on the stuff that you gave me. Now, and it's also a little uneasy for me that one would say the revenue ruling is quite authoritative as to the 133 and the third rule, but it's only a non-binding tax opinion as it relates to the fractional rule, which is, in fact, what you were really suggesting. Well, Your Honor, obviously I was trying to keep within the limits of Rule 28J and not make a long argument. And if that's an issue, Your Honor, I would be happy to brief both those points, but I think there are good answers to those, and my time is up. I know your time is up, but I would like to have you address the notice claim. The notice claim. Yes, and this, again, in the notice claim, which I think I addressed very briefly earlier, Section 204H says, quite unequivocally, a pension plan may be amended if notice is given of a significant reduction in benefit accrual to all participants affected by it. If you follow the Treasury regulation, which has not been challenged in any of the cases I've seen, even including the ones that have gone adverse to plaintiff's position on this issue, nobody disputes that for purpose of 204H, and this gets back to Your Honor's question, Judge Friedman, that for purpose of 204H, rate of benefit accrual is referring to a reduction in the age 65 annuitized benefit. There's just no doubt about that. That's what the Treasury Department says. We believe that ought to also inform this Court's view of 204B1H, but whether or not it does, and I know, Judge Friedman, you said you wouldn't want to give different interpretations necessarily for the different sections of ERISA, but I think that's the way courts have been looking at this. And our complaint alleges no notice was given, period. That's the facts before the Court. They eventually gave notice? They, on the record before the Court, no. Their argument has been there's a summary plan description issue later, which effectively undercut the so-called requirement of prejudice. But that's not the notice. This statute says a notice. It's a special notice. It's not the summary plan description, and it wasn't given. And the only reason we can think Judge Garcia, excuse me, Judge Real, throughout this claim is because he believed there was some requirement of prejudice, which we think is not supported by the case law, any case law about 204H. But he never told you why, did he? He gave cryptic hints when we asked him at all the different, the first two oral arguments, because we had a couple of chance to amend. And we eventually said, okay, Judge, if you're going to have a prejudice requirement, the Second Circuit case of Frommert enunciates a standard of prejudice that would apply to this area. And we alleged exactly the Frommert standard in the last amended complaint. Because you're through when you're, when you sit down, I'm going to ask one more question that relates to this notice. Supposing we determine, as have three other circuits, that you're not going to win anything as it relates to whether we're going to have a problem in the first instance with the plan being discriminatory. We're going to rule that the backloading provision is not going to make it. We're going to rule that FEHA claim is out. And supposing we go that far, what is there left for the notice? What kind of remedy? I mean, you asked for, an injunction wasn't the only thing you asked for. But what kind of a remedy could the district court even impose, given those rulings? But the answer is it could actually do what district courts have done in notice cases and circuit court. In the Roadmaster case, the Seventh Circuit said, if you don't, it doesn't matter whether you're allowed or not allowed to reduce somebody's benefits. I mean, in other words, if you reject the first three claims, you're saying they could do what they did. Doing what they did didn't violate any particular provision of ERISA, and the state law claim is preempted on age discrimination. And I would hope you didn't rule that way. I'm just trying. I mean, here's the situation. I mean, he came with one question, which I would have asked. Nonetheless, it was a great question, which is, hey, the notice, if you read the notice provision, there's a clause right there that suggests it may not have any effect if they didn't do anything wrong. Supposing we say it doesn't do anything wrong all the way through, and now you've only got the notice claim left. What does the district court do? Well, the district court still has to look. If they did not give the notice, Your Honor, by its terms, and this has been interpreted this way strictly by every court that's reached it, the court has to say, for those people affected by the significant reduction in benefit accruals, the plan amendment is not effective, period. Their benefits have to be recomputed with the old preamendment formula. That's the remedy. Has it been authoritatively determined that the failure to give notice means that the plan is not effective? That's exactly right. There is authority for that. The language of the statute, the Roadmaster case, which you cited under 770. I didn't ask you under the statute. I said, has there been any judicial, definitive judicial determination that a failure to give notice without any showing of injury, specific injury, is enough to require invalidation of the plan? Yes, Your Honor. In the cases we cited in our brief. As I understand it, am I correct in this that this has not been certified as a class action, has it? Not yet, Your Honor. We didn't get to that because it was dismissed on the pleadings. It was dismissed all of your claims. But the short answer to your question is yes, that the case law on this says if it's not, if the notice isn't given, then the amendment is not effective and none of those cases impose a requirement of prejudice. However, as I understand what remedies would be available or that you've alleged, altering retirement investment strategies or considering other employment are the remedies. Or the reasons for the notice. That there would be, if they gave the notice, and the reason you suggest there's more than an injunction remedy that would be worthwhile, that the two extra remedies you ask for because the notice would give these people the opportunity then to either alter their investment strategy or consider leaving their employment. That's why we give the notice, as I understand. It would have given them the opportunity. But that's not the relief we seek. And under this particular situation. Under your complaint, what relief did you seek? Under the complaint, we sought injunctive relief on this. And if we can get, I'll get to the correct page. The paragraph that you're talking about, Your Honor, is, I believe, an excerpt from the record. Well, the third-party complaint as to the third claim for relief, and I'm looking at the second amended complaint, declare that it is null and void. Well, if I don't necessarily think that the plans, that there's any discrimination here, enjoin, I don't believe that I would enjoin, such other or appropriate equitable relief. Well, on the third claim for relief, particularly, Your Honor. Yes. But equitable relief has a very limited meaning under a risk. I understand. And it's not going to result in money damages. I understand that. We understand that. And so if you go on, you take a look at, if you look at the rest of that paragraph, which starts at the bottom of the excerpt of record 261 and continue over to 262. Well, I'm looking at page 22 of your amendment. That's the one, Your Honor. And as I understand it, we're supposed to declare that by doing this without written notice, that, first of all, even if I find that, then I declare the conversion to have been null and void. What if I say it's valid? I thereafter preliminary and permanently rejoin. I'm not going to do that because I'm not saying it's invalid. Then I have other order appropriate equitable relief. That's all I got. Well, no, in the last version of the amended complaint, Your Honor, it's ER 261. Yes. Does it have in there a request for punitive damages? No, not on this claim, Your Honor. No. We make very distinct allegations of relief under each claim. We didn't do like some people do, just throw them all into a giant melting pot. So and what we say here is, and first of all, there are two points, Your Honor, to what you just said. Number one is that if you, this is independent of whether or not Your Honor finds any other violation of the law. I understand that. So on this particular claim, it's perfectly, we can say, had they given notice, it would have been perfectly legitimate if Your Honor finds against us on the other claims. We say order appropriate equitable relief, including but not necessarily limited to ordering that defendants take all necessary steps to take the plaintiffs and class members, and the class on this claim is defined as only those who are in the wear-away situation. The position they would have been had defendants not unlawfully amended the pension plan, including but not limited to the following. Administer the plan, and I'll summarize, in accordance with the benefit formula in effect immediately prior to the conversion to the cash balance plan. As to those employees, as to those people affected by wear-away, recalculate accrued benefits according to that old formula, et cetera. We're very precise about that, and certainly the district court can fashion its equitable relief, so the district court may come up with something else on remand that does something less than that. I mean, that's up to the district court. The court is sitting as a court of equity on that claim. Thank you very much. Thank you. I appreciate your very competent argument. Thank you for your extra time. May it please the Court, my name is Mark Haddad, and I represent the Southern California Gas Company. I'd like to begin this morning with the age discrimination claim and move through the other claims as the Court has questions. With respect to the age discrimination claim, as the Court noted this morning, the point of departure is the fact that three courts of appeals have now unanimously rejected the identical age discrimination claim that's advanced here. But what about the, what they call the wear-away claim, which might have an adverse impact? That wasn't ruled on by the other courts. That's true, Your Honor, in terms of as a FEHA claim, and I'm happy to address that for the Court, because there's a fundamental point on which we disagree on that, and it was in response to your question, Judge Fletcher. You asked if there was any significant difference between the state law provisions under which they want to go forward and the age discrimination and employment act, ADEA. And there is a critical, critical difference in the scope of those provisions. Both laws do allow disparate impact claims, but when the Court looks at Section 4 of ADEA, that's codified at Section 623, the Court will see, under subsection I, very specific provisions that define what is discrimination in the context of a challenge to benefit accruals. So Congress put in a parallel provision to 204B1H right into ADEA, and then it provided yet another restriction in subsection 4I, in which it said compliance with Section 4 of ADEA is not required. The parallel provision means compliance with all of the subsection. So Congress has not authorized ADEA to be a font of common law on how to design pension benefit accrual provisions. Congress has created a distinctly parallel regime, and when the Court goes and looks at the FEHA provisions on which plaintiffs want to rely, the Court won't find any of that tailoring. This wear-away part really isn't a matter of accrual. It's a matter of some of the older employees have reached a ceiling and they don't get any accrual for many years. Well, Your Honor, we wouldn't agree with that characterization. Let me explain why. It may not be completely accurate, but is it something that the district court should be ruling on? No, I think conceptually it's clear that it's a challenge to benefit accrual. I think the heart of the disparate impact claim, as they've now explained it in their reply brief, is that workers under the new plan, the amended plan, are no longer accruing benefits each year. They're stuck at their frozen benefit. They're not accruing new benefits. And they say if you're going to change plans, you've got to change to one where we continue to accrue benefits each year. Now, that's a claim about benefit accrual. And what Congress did by putting the parallel provision of 204B1H into Section 4 of IDEA, and by limiting claims to that discrimination, and if you have some other complaint about benefit accrual, you're not going to go under IDEA. And that's why we go right to preemption of the state law claim, because it cannot be said that preempting this sort of claim is going to impair a federal law when the federal law itself would not provide a substantive remedy for wear away. So there's no substantive basis for finding impairment. And then there's also no procedural basis. And let me just briefly respond, because we have a different view about what the record shows in terms of the timeliness of the complaint that was filed before the State Department of Employment. I believe counsel said that there's nothing in the record about that. I would refer you to I believe it is the excerpts of record at page 252. We have cited in all events the paragraphs of the complaint on which we rely, and they are paragraphs 44 and 45 of the second amended complaint at page 252. It's in those paragraphs that the plaintiffs allege the dates on which they filed their state law claim, and what they're complaining about is the effective date of the frozen benefit, which occurred more than 300 days prior to the dates they claimed that they brought their complaints before the State Board. So from a procedural perspective as well, these claims are not ones that are cognizable under ADEA, and so if Congress thought it wouldn't impair the ADEA to allow these kinds of claims to go forward procedurally, then courts have concluded, and we think this Court should conclude, that there will be no impairment in this situation either if preemption operates. If you didn't give notice on time and the plan theoretically didn't go into effect, then that changes all of this. I'd like to address that, Your Honor. First of all, I think we should look at the notice claim in the context that the district court looked at it, which was the district court had already found that the other three claims did not have any viability. So the district court went back and said, okay, I'm going to give you another chance, and in fact he gave them two more chances to plead on the notice. Now, what does this mean? Assuming we're looking at it in that context, this means that there's nothing unlawful about this plan. They have no basis to enjoin it other than saying they didn't get notice. Now, ERISA has never been interpreted as a strict liability statute. The notice provisions are not strict liability provisions. There is a provision of the Internal Revenue Code that provides for excise taxes for penalties if a notice provision is violated. There are administrative provisions that enforce in sort of a strict liability way a failure to give notice. But your argument is fine if we agree with all of these dismissals. But what if we disagree? If you disagree, Your Honor, you still have to find some minimal basis for injury flowing from the lack of the notice in order to let the claim go forward. Well, my worry is the one you were addressing before that interruption. What if I find that every one of those, I ask the same question of counsel, what if I go with you on every one of those? What you're suggesting is that if I don't find any violation of the law in this particular instance, that notices of no essence whatsoever. No, Your Honor, I wouldn't go that far. I'll give you two responses to that. Well, then what, I mean, my worry is that I can't find anything in this record that you gave the required notice. Your Honor, we have chosen not to dispute that factual issue because of this, at this stage. So at this point, if I even join you, I'm still troubled by the fact there is not the required notice. And now for you to, I cannot find any reason to suggest that if you don't give notice of what you're going to do, even if you comply with what you need to comply with, that these people, taking his allegations in his briefing, shouldn't have had the right to alter their retirement investment strategies, shouldn't have had the right to consider other employment, which is totally out there. But all of that makes it such that I wonder how I can just say, well, it's of no essence. May I offer the Court three reasons for that? First, there is the administrative remedy, which means that a violation of law, if it does happen, does have a remedy through an administrative penalty. What administrative law are you referring to? No, I don't want to, what should they have done? What should they have done in terms of invoking administrative remedies that they didn't do? I don't want you to give me a citation or something. What should they have done? The administrative remedy is not a remedy to them. It says assume that they get no remedy. I'm just responding at a threshold level to say this doesn't mean that there's no meaning to the requirement. It means that it can be enforced through federal administrative penalties. That's my first point. The second point is... Well, you mean the federal government could perhaps have moved against them and tried to enjoin them from implementing this plan because they hadn't given notice? The federal government could penalize the failure to give timely notice with an excise tax that would penalize the failure to give notice for social security. That's a new one on me, but go ahead. The second point is assuming we had to give notice, then we think that they need to plead some rudimentary injury flowing from the lack of notice to have standing to raise the claim. That was in the Stiles case, the court required a showing of harm. We've cited the other cases that have required harm. But they could have altered their retirement investment strategy. Rather than continuing the way it was, they could have put it someplace else. Your Honor, on that, what they pleaded, strictly speaking, was they lost the opportunity to make a different investment choice. But nonetheless, that's what you go back and have a trial about. Maybe they would have made more money doing that. Well, our position on that is simply that the loss of the opportunity, as they put it, one always has the opportunity to alter savings. At most, it was the loss of a motivation, the loss of a motivation to do it. We don't think that satisfies... We don't think that satisfies the law. It isn't just a case, I give you notice, and then now I notice that the speed limit is only 40 miles an hour. And if you go past that, you violated the rule. Here they get notice because it gives them the opportunity to alter their conduct. That's correct, Your Honor. And a critical missing allegation here with regard to their alleged lack of receipt of notice is they've had the opportunity to plead and to proffer that they did not receive the summary plan description. They have not pleaded that. They've said they haven't received the notice they were entitled to under the statute. They said they haven't received the special notice in 1998. But they have not said that they could plead that they didn't receive the summary plan description, which is in the supplemental excerpts of record. No, I thought they pled that they didn't receive the notice the statute required you to give them. And that the summary plan didn't come until you put it into effect for two years, or put it into effect for a period of time. And so, therefore, they were out. But the harm that they say they suffered didn't begin until July of 2003. That's when their benefit was frozen. They were the beneficiary of a grandfather provision. So when they received the summary plan description, which they have not alleged that they never received, they received it three years before the effective date of the frozen benefit. They had three years to adjust their investment strategies. The problem with that is that the statute is very specific that the notice has to be given 15 days before the effective date of the plan. And you say, well, that's okay, because the plan did not have the impact on these people for three years, and they got notice within that period. Well, for purposes of the injury allegation, Your Honor, what we say is any conceivable injury that might have flowed, if we accept their contention that they didn't get notice in 1998, any conceivable injury was mooted when the summary plan description was given three years in advance of the freezing of the benefit. Well, I don't understand why that is so. If, assuming that they had been given the statutory notice, maybe they would have changed and reinvested some of their money and in the three years would have made a lot of money on it. I don't know. We don't know. We don't have that allegation here, Your Honor, and that's something that we pointed to in our brief. This isn't a case where in some notice cases where, for example, a stock option is expiring at the end of the year, and if you don't give people notice, they can't exercise a stock option. They didn't say, here's what we would have done differently in the first two years of the grandfather period. So, anyway, that's our position here. Is there anything else you said that they were going to be able to have as a result of the notice requirement? Back to the original question. Yes. I did want to make one further point on the notice requirement, independent of this injury question, which is, and this really gets back to Judge Friedman's point at the outset of the argument, which is there is no basis for requiring notice in this case on these claims, because even construing the 204B1H provision, the rate of benefit accrual provision, as they do, in other words, even construing it as referring to the outputs of a benefit calculation at age 65, there is no age discrimination. There is no reduction in the rate of benefit accrual as they define it in this case, and that's because of the time value of money. It is the time value of money that explains the differences, not a difference in the rate of benefit accrual. And if I could take the Court through an example of what I mean by that, I think the Court can see that this is not a case where notice was needed for these individuals of a reduction, even in the rate of future benefit accrual under 204B1H, because there is no such reduction. Take, for example, two employees. They both join the company. One is 30 years old. The other is 55 years old. They each work for the company for 10 years. Then the one who's 55 retires, and the one who's 30, after 10 years, goes and takes another job, and decides to take a distribution of his benefits at that time. So they start on the same day, they leave on the same day, they each work 10 years, and assume their salaries are the same. Their benefits are going to be exactly the same. The only way that output, that ultimate benefit accrual, becomes a different number, is if the 30-year-old decides not to take that distribution at age 40, but continues to work. Now, if he continues to work, or even leaves his benefit as it is and let it continue to accrue interest, he is going to have a bigger lump sum when he eventually takes it. But that's because of the time value of money. That's not because of his age. There's no ultimate reduction in the output, because the interest credits simply offset the passing of time, the erosion of inflation, and so forth. So this court need not find a duty of notice, even in this situation, on their theory, because the net output, the value of the output, is going to be the same for each. And that's an argument that's really independent of the whole proper statutory construction of the phrase rate of benefit accrual, which of course we briefed and I'm happy to address as well. But I did want to respond to the court's question, Mr. Lewis, on that. Because of this ceiling, there is a reduction in benefits. Is that not right? It's not right, Your Honor, because you need to look at the benefits at any given point in time. When plaintiffs make their argument, they say, under the plan, interest is always projected out to age 65. And so for a relatively older person, there are fewer years to project out. I wasn't thinking about that. I was thinking about the fact that for a person who has in the account already X dollars, they say they will not accrue any more interest until others reach that line. And so in effect, there could be an argument that there is a reduction in benefits, certainly. But that's not how the argument has gone forward. Under the cash balance plan, you look at what the cash balance plan, you know, formula is. You look at how that works. And under that formula, one accrues pay credits and interest credits every year. Now, they, and they concede that because they give their estimated period of wear-away when that account will eventually go past the frozen benefits. So there's accrual every year. Now, they happen to be entitled to a higher benefit under an older, different formula. But that's just the situation that the court had in Williams v. Caterpillar, really. That's not, doesn't mean you're not accruing. It's not a reason to find a violation of the minimum accrual rules, which is what the court held there. It just means that you've got a different applicable benefit that's higher and that you're guaranteed and that you get. And you would get that under the statute, under the ERISA statute anyway, whether there was a plan provision giving you that or not. Because you can never cut back on a higher benefit that's been accrued at any point. Now, that's 204G. So, really, we have a situation where, from every perspective, we think whether you are looking at the three merits claims or the notice claim, that the district court correctly concluded it should dismiss. Thank you, counsel. Thank you both very much, because I think you heard us asking you both questions that are really troubling us about the different areas. We wanted your input, and this has been extremely informative, both sides. We appreciate you both. This is a matter where we've worked pretty hard to get to even the point where we could ask you a good question. And we understand your argument, we understand what you've given us, and we thank you so much for helping us out in that manner, both of you, very, very, very good. Case 0655599, Hurlick v. Southern California Gas Company, is now submitted, and this court is adjourned.
judges: Fletcher, Smith, Friedman